# EXHIBIT 1

EFiled:  May 17 2021 05:27PM EDT
Transaction ID 66608188
Case No. N21C-05-144 DCS

# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| SERVICEPOWER, INC., | |
| Plaintiff, | C.A. No. |
| v. | |
| SMART MERCHANT, LLC, | |
| Defendant. | |

## COMPLAINT

ServicePower, Inc., by and through its undersigned counsel, states as its complaint against Smart Merchant, LLC as follows:

### The Parties

1.      ServicePower, Inc. ("***ServicePower***") is a Delaware corporation with a principal place of business at 8180 Greensboro Drive, Suite 600, McLean, VA 22102.

2.      Smart Merchant, LLC ("***Smart Merchant***") is a Maryland limited liability company with a principal place of business at 440 Placid Street, Gaithersburg, MD 20878.  Smart Merchant represents that it provides merchant credit and debit card processing, check processing, software and hardware solutions, and related services (the "***Services***").

### The Agreement

3.      ServicePower and Smart Merchant entered into that certain Preferred Partner Agreement (the "***Agreement***") with an effective date of May 1, 2019 (the "***Effective Date***").  A copy of the Agreement is appended hereto as **Exhibit A**.

4.      The initial term of the Agreement runs through the third anniversary of the Effective Date (*i.e.*, until May 1, 2022), and automatically renews on one-year terms, unless terminated in accordance with the provisions of the Agreement. *See* Agreement at para. 1.

5.       Among other obligations within the Agreement, ServicePower is to promote and recommend the Services to its contractors and subcontractors ("Company Partners"), and refer to Smart Merchant as Service Power Pay when promoting such Services.  *See* Agreement at para. 2.1.

6.      Among other obligations within the Agreement, Smart Merchant is obligated to pay fifty percent (50%) of the "Net Profits" received each month by Smart Merchant for each Company Partner that enters into a merchant agreement. "Net Profits" means all revenue collected by Smart Merchant attributable to Company Partners, less "Pass-Through Fees".  "Pass-Through Fees" means interchange fees, monthly and annual statement fees and PCI non-compliance fees for failing to complete the annual PCI compliance questionnaire, if applicable, billed by Smart Merchant through its dba ServicePower Payment.  All amounts due to ServicePower by Smart Merchant shall be paid in arrears within ten (10) days

following the date Smart Merchant receives its payment from its payment
processor, together with an accounting in sufficient detail to enable ServicePower
to verify the accuracy and completeness of the report and payment amount. *See*
Agreement at para. 3.2.

7.      ServicePower may provide Smart Merchant with written notice of
Smart Merchant's breach of the Agreement, and terminate the Agreement if Smart
Merchant does not cure the breach within thirty (30) of that written notice. *See*
Agreement at para. 6.1.

8.      The Agreement is governed, construed, interpreted and enforced in
accordance with the domestic internal laws of the State of Delaware, without
giving effect to any choice of law or conflict of law provision or rule that would
cause the application of the laws of any other jurisdiction. *See* Agreement at para.
9.1.

**Smart Merchant's Pre-Agreement Fraudulent Misrepresentations**

9.      The parties began discussions over the terms and conditions of a
business relationship on or around March 2019.

10.      Kevin Deegan, President, led the discussions on behalf of Smart
Merchant.

11.     Kevin Deegan represented that Smart Merchant would compensate ServicePower for payment processing services provided to ServicePower's customers referred to utilize Smart Merchant's services that were to be integrated with ServicePower's software platform.

12.     Kevin Deegan's representations are imputed to Smart Merchant.

13.     Kevin Deegan's representations were designed and intended to induce ServicePower to provide its customer contacts, information and data to Smart Merchant.

14.     Kevin Deegan's representations were designed and intended to induce ServicePower into entering the Agreement.

15.     Kevin Deegan's representations were false, misleading and intended to induce ServicePower to rely on such representations.

16.     Kevin Deegan's representations were false and misleading because to date Smart Merchant has not provided any compensation resulting from customer referrals.

17.     ServicePower reasonably and justifiably relied upon Smart Merchant's false and misleading statements.

18.     Had Kevin Deegan not made the false and misleading representations, ServicePower would not have entered into the Agreement and would not have

-4-

provided ServicePower's customer contacts, information or data to Smart Merchant.

## Smart Merchant Breaches the Agreement

19.     ServicePower has introduced Company Partners for the Services.  For at least one of the Company Partners introduced by ServicePower to Smart Merchant for the Services, ServicePower estimates that Smart Merchant has processed over $12 million in transactions since the Effective Date.  Yet, since the Effective Date, Smart Merchant has paid ***nothing*** to ServicePower.  Nor has Smart Merchant provided monthly accountings to ServicePower.

20.      The Agreement provides that Smart Merchant may deduct from gross revenue received from Company Partners only those Pass-Through Fees that are "billed by Smart Merchant through its dba ServicePower Payment."

21.     Smart Merchant, upon information and belief, is deducting amounts beyond the permitted Pass-Through Fees from the gross revenue received from Company Partners to wrongfully eliminate Net Profits and thereby improperly eliminate ServicePower's right to the amounts it is owed under the Agreement.

22.     Smart Merchant is also wrongfully refusing to provide any monthly accountings to ServicePower.  Smart Merchant is accordingly not providing

monthly accountings "in sufficient detail to enable ServicePower to verify the accuracy and completeness of the report and payment amount" as required by the Agreement.

23.     Smart Merchant's excuse for not providing any accountings to ServicePower is, upon information and belief, that since there are no Net Profits there is no reason for an accounting.  Smart Merchant's position defies the plain language of the Agreement and common sense.  The plain basis for the monthly accounting is to provide ServicePower with the data from which it can verify that the Net Profit calculation forwarded by Smart Merchant is accurate.

## ServicePower Terminates the Agreement

24.     ServicePower delivered a written notice of breach of the Agreement to Smart Merchant dated April 14, 2021.  A copy of the breach notice is appended as **Exhibit B**.  Pursuant to paragraph 6.1 of the Agreement, Smart Merchant was obligated to cure its breach of the Agreement on or before May 14, 2021.  Smart Merchant did not cure its breach of the Agreement by May 14, 2021, or ever.

## COUNT I
## (Breach of Contract)

25.     ServicePower incorporates the foregoing paragraphs as though fully set forth herein.

27123464v.1

26.     Smart Merchant's failure to provide monthly accountings to ServicePower breaches the Agreement.

27.     Smart Merchant's improper calculation of Net Profits breaches the Agreement.

28.     Smart Merchant's breach of the Agreement has resulted in damages to ServicePower to include, without limitation: (i) consequential damages; (ii) special damages; (iii) attorneys' fees and costs; and (iv) such other relief as the Court may deem just and proper.

## COUNT II
## (Declaratory Judgment)

29.     ServicePower incorporates the foregoing paragraphs as though fully set forth herein.

30.     ServicePower seeks a judicial declaration that the Agreement was terminated effective May 14, 2021.

31.     The Agreement includes a provision prohibiting ServicePower from soliciting within two (2) years after termination of the Agreement any Company Partner that ServicePower referred to Smart Merchant.  *See* Agreement at para. 2.6.

32.     ServicePower seeks a judicial declaration that the non-solicitation provision is unenforceable because of Smart Merchant's material breaches of the Agreement and/or Smart Merchant's fraudulent conduct, and/or as otherwise provided by applicable Delaware law.

-7-

## COUNT III
## (Fraudulent Inducement)

33.     ServicePower incorporates the foregoing paragraphs as though fully set forth herein.

34.     Smart Merchant's pre-Agreement conduct as described herein fraudulently induced ServicePower to enter the Agreement and provide ServicePower's customer contacts, information and data to Smart Merchant.

35.     As a result of Smart Merchant's fraudulent conduct, Service Power has suffered damages to include, without limitation: (i) consequential damages beyond the indemnification limitations set forth in the Agreement; (ii) special damages; (iii) punitive damages; (iv) rescissory damages in an amount to return ServicePower to the same position it held prior to Smart Merchant's fraud; (v) pre- and post-judgment interest; (vi) attorneys' fees and costs; and (vii) such other relief as the Court may deem just and proper.

## COUNT IV
## (Tortious Interference with Business Relations)

36.     ServicePower incorporates the foregoing paragraphs as though fully set forth herein.

37.     At all times relevant, Smart Merchant was aware of ServicePower's relationships with the Company Partners.

38.     Smart Merchant used deceptive and misleading tactics, as described herein and to be further proven through trial, to gain access to ServicePower's Company Partners.

39.     As a result of Smart Merchant's wrongful and improper interference with ServicePower's Company Partner relationships, Service Power has suffered damages to include, without limitation: (i) consequential damages beyond the indemnification limitations set forth in the Agreement; (ii) special damages; (iii) punitive damages; (iv) pre- and post-judgment interest; (v) attorneys' fees and costs; and (vi) such other relief as the Court may deem just and proper.

## COUNT V
## (Unjust Enrichment)

40.     ServicePower incorporates the foregoing paragraphs as though fully set forth herein.

41.     Smart Merchant's wrongful calculation of fees and expenses charged against Company Partners has resulted in an unjust enrichment of Smart Merchant and corresponding impoverishment of ServicePower.

42.     Smart Merchant's wrongful and improper conduct is without justification.

43.     As a result of Smart Merchant's wrongful and improper conduct, Service Power has suffered damages to include, without limitation: (i) consequential damages beyond the indemnification limitations set forth in the

27123464v.1

Agreement; (ii) special damages; (iii) punitive damages; (iv) pre- and post-judgment interest; (v) attorneys' fees and costs; and (vi) such other relief as the Court may deem just and proper.

WHEREFORE, ServicePower, Inc. respectfully requests entry of a judgment:

A.     That Smart Merchant, LLC breached the Agreement; and

B.     That the Agreement was effectively terminated by ServicePower, Inc. as of May 14, 2021; and

C.     That the non-solicitation provision of the Agreement is not enforceable against ServicePower, Inc.; and

D.     That Smart Merchant fraudulently induced ServicePower to enter the Agreement and/or to provide Smart Merchant with ServicePower's customer contacts, information and data; and

E.     That Smart Merchant has interfered with ServicePower's relationships with Company Partners; and

F.     That Smart Merchant has been unjustly enriched at ServicePower's expense; and

G.     That Smart Merchant, Inc. must pay damages to ServicePower, Inc. as requested herein this Complaint in an amount to be determined; and

H.     Any other relief the Court deems just and appropriate.

27123464v.1

WHITE AND WILLIAMS LLP

By:_____

MARC S. CASARINO (DE #3613)
KELLY ROWE (DE #6199)
600 N. King Street, Suite 800
Wilmington, DE 19801
Ph: (302) 467-4532
Email:  casarinom@whiteandwilliams.com

*Attorneys for Plaintiff,*
*SERVICEPOWER, INC.*

-11-

EXHIBIT A

EFiled:  May 17 2021 05:27PM EDT
Transaction ID 66608188
Case No. N21C-05-144 DCS

## PREFERRED PARTNER AGREEMENT

**This Preferred Partner Agreement** ("Agreement") is effective as of the 1st day of May, 2019 ("Effective Date"), by and between **Smart Merchant, LLC** a Maryland limited liability company with offices located at 6700 Alexander Bell, Suite 200, Columbia, MD 21046 ("Smart Merchant"), and **ServicePower, Inc.,** a Delaware corporation, with offices located at 8180 Greensboro Drive, Suite 600, McLean, VA 22102 (the "Company").  Smart Merchant provides merchant credit and debit card processing, check processing, software and hardware solutions, and related services ("Services").  Company desires to utilize Smart Merchant as its preferred provider for the Services.  Therefore, for adequate consideration, the sufficiency of which is acknowledged, the parties agree as follows:

1.     Term of Agreement. This Agreement will commence as of the Effective Date and will continue in full force and effect for a period of three (3) years (the "Initial Term").  This Agreement will automatically renew for successive terms of one (1) year (each a "Renewal Term"), unless terminated by either party upon at least sixty (60) days' written notice to the other party prior to the expiration of the then-current Renewal Term (collectively, the Initial Term and each Renewal Term, the "Term").

2.     Obligations of Company.  During the Term, Company's obligations are as follows:

2.1     Promotions and Recommendations. On an exclusive basis, Company will promote and recommend the Services to its contractors and subcontractors ("Company Partner(s)"). Company shall refer to Smart Merchant as Service Power Pay when promoting the services.

2.2     Provision of Referral Information. Company will promptly provide referral information to Smart Merchant for any Company Partner that indicates an interest in the Services in the manner reasonably requested by Smart Merchant.  The parties shall mutually agree from time to time upon the type and amount of referral information given by Company to Smart Merchant, and initially, Company shall deliver to Smart Merchant the name, address, business phone number, and email address of the Company Partner.

2.3     Marketing. Company's promotional efforts will be pursuant to specific terms and procedures as mutually agreed upon by the parties from time to time.  Each party will obtain the prior written approval of the other party for any marketing and promotional materials that in any way reference the other party, their affiliates or their parents in connection with any representation, solicitation, advertising or promotion of the Services or the other party. Each party will correctly identify the owner of the trademarks, service marks, copyrights, patents, and other intellectual property registrations of the other party and will use such trademarks, service marks, copyrights, patents, and other intellectual property registrations of the other party only in the manner approved by the other party.  Whatever uses a party makes of the trademarks, service marks, copyrights, patents, and other intellectual property registrations of the other party, if permitted as provided above, shall be for the exclusive benefit of the owner of such trademarks, service marks, copyrights, patents, and other intellectual property registrations.  Each party agrees

to inform the other party immediately of any infringements or other improper action with respect to such trademarks, service marks, copyrights, patents, and other intellectual property registrations of the other party of which such party is aware.  Upon termination or expiration of this Agreement, each party agrees to immediately discontinue all uses of the other party's trademarks, service marks, copyrights, patents, and other intellectual property registrations.

2.4     <u>Service Notice</u>.  Upon learning of any problems that a Company Partner referred by Company has experienced with the Services, Company will promptly advise Smart Merchant of such problems.

2.5     <u>Contact Persons</u>.  Company will designate a contact person who will coordinate the transfer of information between Company and Smart Merchant, and such person will be available during normal business hours to respond to reasonable inquiries by Smart Merchant.

2.6     <u>Non-Solicitation</u>.  During the Term of this Agreement and for one (1) year after termination of this Agreement and/or such merchant agreement, Company shall not (i) solicit or refer a Company Partner that was referred to Smart Merchant under this Agreement to a third party that provides services similar to the Services; or (ii) solicit or otherwise cause any Company Partner to terminate its merchant agreement or receipt of Services from Smart Merchant.

3.      <u>Obligations of Smart Merchant</u>. During the Term, Smart Merchant's obligations are as follows:

3.1     <u>Company Partner Solicitations</u>.  Smart Merchant shall market the Services to Company Partners under the d/b/a Service Power Pay.  Upon receipt of the referral information from Company, Smart Merchant will promptly contact the referred Company Partner via direct mail, electronic mail, telephone or other means.

3.2     <u>Compensation.</u>  During the Initial Term and each Renewal Term, Company shall be entitled to 50% of the of the "Net Profits" received each month by Smart Merchant for each Company Partner that enters into a merchant agreement.  "Net Profits" means all revenue collected by Smart Merchant attributable to Company Partners, less "Pass-through Fees".  "Pass-through Fees" means interchange fees, monthly and annual statement fees and PCI non-compliance fees for failing to complete the annual PCI compliance questionnaire, if applicable, billed by Smart Merchant through its dba ServicePower Payment.  Pass-through Feesmay be modified by Smart Merchant or its payment processor from time to time.  Company shall only be entitled to such amounts if Smart Merchant receives its corresponding payment from its payment processor.  All amounts due to Company shall be paid monthly in arrears within 10 days following the date Smart Merchant receives its payment from its payment processor, together with an accounting in sufficient detail to enable Company to verify the accuracy and completeness of the report and payment amount.

3.3     <u>Company Partner Agreements for Services</u>. Smart Merchant will assist the referred Company Partners in selecting the appropriate Services package offered by Smart Merchant to such Company Partner.  Company understands that Smart Merchant will have the

right, in its sole discretion, to refuse to enter into a merchant agreement with any referred Company Partner.

       3.4   <u>Smart Merchant Contact Person</u>. Smart Merchant will designate a contact person who will coordinate the transfer of information between Smart Merchant and Company, and such person will be available during normal business hours to respond to reasonable inquiries from Company and the Company Partners.

       3.5   <u>Training</u>. Smart Merchant may train the representatives of Company regarding the Services and may provide Company with marketing materials, which will be governed by Section 2.3 above, to effectively initiate contact and promote the Services to Company Partners.

       3.6   <u>Pricing</u>. Smart Merchant shall provide Company Partner's preferred pricing of $0.07-$0.09 per transaction and will provide Company Partner's preferred pricing and fees for miscellaneous services in connection with the merchant agreements and Services to referred Company Partners, pursuant to Smart Merchant's usual and customary qualification and underwriting requirements.

       3.7   <u>Services and Support</u>. Smart Merchant and its third party providers will provide all Services to referred Company Partners and will provide all related Company Partner service and support.  Company shall not interfere with, alter or attempt to alter such Company Partner service and support terms with respect to any Company Partners.

       4.   <u>Company Partner Relationships</u>.  Smart Merchant will have full and exclusive authority to negotiate with each referred Company Partner to establish, modify, terminate or extend the terms and conditions of any merchant agreement with such Company Partner. Company understands and agrees that it will in no way be responsible for, have an ownership interest in, or be a party to any merchant agreement between Smart Merchant (or its third party payment processor) and any referred Company Partners, and the rights and obligations thereunder may be modified, terminated or assigned by Smart Merchant, in whole or in part, in its sole discretion, subject only to specific limitations, if any, established in the applicable merchant agreement.

       5.   <u>Representations and Warranties; Indemnification; and Limits of Liability</u>.

       5.1   <u>Mutual Representations and Warranties</u>. Company and Smart Merchant each represent and warrant the following: (i) it is a business duly incorporated, validly existing, and in good standing under the laws of its state of domicile; (ii) it has all requisite power, financial capacity, and authority to execute, deliver, and perform its obligations under this Agreement; (iii) this Agreement, when executed and delivered, shall be a valid and binding obligation of it enforceable in accordance with its terms; (iv) it is duly licensed, authorized, or qualified to do business and is in good standing in every jurisdiction in which a license, authorization, or qualification is required for the ownership or leasing of its assets or the transaction of business of the character transacted by it, except where the failure to be so licensed, authorized, or qualified would not have a material adverse effect on its ability to fulfill its obligations under this Agreement; (v) the execution, delivery, and performance of this Agreement has been duly

authorized by it and this Agreement constitutes the legal, valid, and binding agreement of it and is enforceable against it in accordance with its terms; (vi) it shall comply with all applicable federal, state, local, international, or other laws and regulations applicable to the performance by it of its obligations under this Agreement and shall obtain all applicable permits and licenses required of it in connection with its obligations under this Agreement; and (vii) there is no outstanding litigation, arbitrated matter or other dispute to which it is a party which, if decided unfavorably to it, would reasonably be expected to have a potential or actual material adverse effect on its ability to fulfill its obligations under this Agreement.

       5.2    <u>Representations and Warranties by Smart Merchant</u>.  Smart Merchant represents and warrants the following: (i) the software used by Smart Merchant to provide the Services hereunder shall not, to its knowledge, infringe upon any United States or foreign copyright, patent, trade secret, or other proprietary right, or misappropriate any trade secret, of any third party, and Smart Merchant further represents and warrants that it has neither assigned nor otherwise entered into an agreement by which it purports to assign or transfer any right, title, or interest to any technology or intellectual property right that would conflict with its obligations under this Agreement; (ii) there are no legal proceedings threatened or pending against Smart Merchant by other users of the Services based upon problems with the Services or Smart Merchant's performance; (iii) the Services shall conform to and operate in accordance with the Services' documentation; (iv) the Services shall be free of any mechanism which may disable the Services, and Smart Merchant warrants that no data loss will result from such items if present in the Services when delivered to Company hereunder; and (v) the Services shall be free of any harmful or hidden programs or data incorporated therein with malicious or mischievous intent.

       5.3    <u>Indemnification and Limited Liability</u>. Each party shall indemnify, defend, and hold harmless the other party, its managers, members, directors, officers, employees, agents, representatives, and affiliates from and against any and all claims, losses, actions, damages, expenses and all other liabilities, including, without limitation, attorneys' fees, arising out of or resulting from any action or failure to take action by the other party (or its managers, members, directors, officers employees, agents, or representatives) with respect to any performance of, or any failure to perform, the obligations under this Agreement.

       5.4    <u>Limitations of Liability</u>. Neither party shall be liable for any indirect, incidental, special, consequential, exemplary or punitive damages, including but not limited to, damages for loss of profits, goodwill, use, data or other intangible losses (even if advised of the possibility of these damages), arising hereunder. Except for amounts owed by Smart Merchant to Company under Section 3.2, under no circumstances will either party's total liability of all kinds arising out of or related to this Agreement, regardless of the forum and regardless of whether any action or claim is based on contract, tort, or otherwise, exceed the greater of $500,000 or the total amount paid by Smart Merchant to Company during the twelve (12) months preceding the events giving rise to such claim or damages. Because some states do not allow the exclusion or limitation of liability for consequential or incidental damages, the above limitation may not apply.

6.      Grounds for Termination.

6.1     Uncured Breach. Either party may terminate this Agreement immediately upon written notice if the other party has failed to cure any breach of this Agreement within thirty (30) days following the receipt of written notice of such breach given by the non-breaching party.

6.2     Fraud, Intentional Misrepresentation, Willful Misconduct. If a party engages in fraud, intentional misrepresentation or willful misconduct in connection with its performance or failure to perform under this Agreement, the other party will have the right to terminate this Agreement immediately upon written notice to the breaching party.

6.3     Termination for Convenience.  Beginning twelve months from the Effective Date, Company can terminate this Agreement for convenience at any time upon 90 days' prior written notice to Smart Merchant.

7.      Effect of Termination.  The following provisions shall apply upon the termination or expiration of this Agreement:

7.1     Cessation of Marketing Activities. Company will promptly discontinue its promotional efforts and recommendation of the Services.  Each party shall remove from its property and immediately discontinue all use, directly or indirectly, of trademarks, service marks, copyrights, patents, and other intellectual property registrations of the other party.

7.2     Effect.  Upon termination or expiration of this Agreement, all obligations under this Agreement shall automatically and immediately cease and terminate, except for obligations accruing prior to the date of the termination or expiration.

8.      Confidentiality. Each party acknowledges that it may disclose or learn Confidential Information about the other party and the Company Partners during the Term of this Agreement. "Confidential Information" will mean all proprietary, secret or confidential information or data relating to a party and its business operations, including, without limitation, products or services, clients, Company Partners, or potential Company Partners, pricing information and marketing plans related to the Services, and the terms of this Agreement. Notwithstanding the foregoing or anything to the contrary in this Agreement, Confidential Information does not include any of the following: (a) information that is or subsequently comes within the public domain without any violation of this Agreement and through no fault of a party, (b) information that is already known to and possessed by a party provided that such party can deliver to the other party written documentation that clearly demonstrates prior knowledge and possession, (c) information that is independently developed by a third party and is disclosed on a non-confidential basis by such third party, provided that such third party is not subject to any duty of confidentiality with respect to such information, or (d) information that is lawfully required to be disclosed by law, provided that the disclosing party shall notify the other party of such disclosure requirement promptly and with enough time, if possible, for the non-disclosing party to seek protective measures for any Confidential Information to be disclosed.  During the Term and for ten (10) years after the termination or expiration of this Agreement, each party receiving Confidential Information, including its employees, agents, and representatives, will: (w) maintain it in confidence and not

use the Confidential Information for its own benefit or for the benefit of any third party, except to the extent necessary to carry out the purposes of this Agreement, in which event written confidentiality restrictions will be imposed upon the party to whom such disclosures are made; (x) limit access to any Confidential Information to its employees and agents with a need-to-know in connection with this Agreement; (y) use at least the same degree of care in maintaining its secrecy as it uses in maintaining the secrecy of its own Confidential Information, but in no event less than a reasonable degree of care; and (z) return all copies, notes packages, diagrams, computer memory media and all other materials containing any portion of the Confidential Information to the disclosing party upon its request.

     9.    <u>General Provisions</u>.

     9.1    <u>Applicable Law</u>. The terms and conditions of this Agreement will be governed, construed, interpreted and enforced in accordance with the domestic internal laws of the State of Delaware, without giving effect to any choice of law or conflict of law provision or rule that would cause the application of the laws of any other jurisdiction.

     9.2    <u>Notices</u>. All communications under this Agreement will be in writing and will be delivered in person or by mail courier, return receipt requested, addressed to the addresses specified in the opening paragraph of this Agreement and to the attention of that party's president. The parties may, from time to time, designate different persons or addresses to which subsequent communications will be sent by sending a notice of such designations in accordance with this Section. Failure to designate different persons or addresses to which subsequent communications will be sent shall not limit either party's rights under this Agreement to notify the other party at any address or location then known to the notifying party.

     9.3    <u>Severability</u>. The parties believe that every provision of this Agreement is effective and valid under applicable law, and whenever possible each provision of this Agreement will be interpreted in such a manner as to be effective and valid. If any provision of this Agreement is held, in whole or in part, to be invalid, any court or other tribunal adjudicating the rights and duties of the parties under this Agreement shall alter, modify, or strike portions of the Agreement so that it will be enforceable to the fullest extent permitted by law and consistent with the intent and purpose of the parties, and the remainder of such provision and this Agreement will remain in full force and effect.

     9.4    <u>Binding Effect</u>. This Agreement and each covenant, term and condition will inure to the benefit of and be binding upon the parties and their respective successors and permitted assigns.

     9.5    <u>Modification; Waiver</u>. This Agreement cannot be amended, altered or modified, and no provision of this Agreement may be waived, unless done so in writing, signed by the party against whom such amendment, alteration, modification or waiver is sought to be enforced. A waiver by a party of any breach or failure to comply with any provision of this Agreement by the other party will not be construed as or constitute a continuing waiver of such provision or a waiver of any other breach of or failure to comply with any other provision of this Agreement.

9.6     Entire Agreement. This Agreement constitutes the entire Agreement by and between the parties with respect to the subject matter of this Agreement. The provisions of this Agreement will supersede all contemporaneous oral agreements, communications and understandings and all prior oral and written communications, agreements and understandings between the parties with respect to the subject matter of this Agreement.

9.7     Assignment. Neither this Agreement nor any rights or obligations hereunder may be assigned or delegated, directly or indirectly, by a party to a third party without the prior written consent of the other party.

9.8     Counterparts.  This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same Agreement.  To the extent signed and delivered by means of a facsimile machine or other electronic transmission (including e-mail of a "PDF" signature), this Agreement shall be treated in all respects and for all purposes as an original agreement and shall be considered to have the same binding legal effect as if it were the original signed version of this Agreement.

9.9     Survival. All agreements that by their context are intended to survive the termination of this Agreement, including but not limited to Sections 2.4, 3.6, 4, 5.3, 5.4, 8 and 9 will survive termination of this Agreement.


Smart Merchant LLC                          ServicePower, Inc.


By: _____            By:  _____
        Kevin Deegan, President              Name:  _____
                                             Its:_____

EXHIBIT B

EFiled: May 17 2021 05:27PM EDT
Transaction ID 66608189
Case No. N21C-05-144 DCS

◯ **KIRKPATRICK & SABARSKY LLP**

Kirkpatrick & Sabarsky LLP       500 Cypres...
(760) 268-2069              Encinitas...

Unite

---

**NOTICE OF BREACH LETTER**

April 14, 2021

*VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED*
*AND ELECTRONIC MAIL TO JMILLER@BODMANLAW.COM*

Ms. Jill Miller, Esq.
201 South Division Street, Suite 400
Ann Arbor MI 48104

Re:    Preferred Partner Agreement Between ServicePower, Inc. and Smart Merchant, LLC

Dear Jill,

Reference is made to that certain Preferred Partner Agreement ("Agreement") effective May 1, 2019 ("Effective Date"), by and between Smart Merchant, LLC ("Smart Merchant"), and ServicePower, Inc. (the "Company"). As you know, my firm represents the Company in connection with what is now clearly a dispute with Smart Merchant – specifically with respect to the estimated $10+ million of applicable payments (collectively, the "Processed Payments") estimated by my client to have been processed by Smart Merchant to date from GEA, one of the Company's "Company Partners" referred to Smart Merchant in accordance with the Agreement. As you also know, I have sent you a previous letter, dated January 13, 2021 (the "January 2021 Letter"), regarding the Company's allegation that Smart Merchant is, and remains, in breach of Section 3.2 of the Agreement by (1) failing to pay Company "50% of the of the 'Net Profits' received each month by Smart Merchant" and (2) failing to provide a monthly "accounting in sufficient detail to enable Company to verify the accuracy and completeness of the report and payment amount" (collectively, the "Section 3.2 Breaches"). Despite repeated requests made by the Company for Smart Merchant to provide information concerning the "Pass-through Fees" that Smart Merchant is apparently deciding, on its own recognizance and without support in the Agreement, to deduct from the fees it has been collecting from the Processed Payments, no such information has been provided by Smart Merchant to date.

Subsequent to the date of the January 2021 Letter, Company has proposed revisions to the Agreement to address the concerns disclosed in the January 2021 Letter, which, after discussions between the parties, your client has apparently rejected. You indicated to me via email sent on April 2, 2021 that Smart Merchant has ". . . decided to cease negotiations and continue operating under the original agreement." To date, and despite the foregoing, Smart Merchant has failed to make any payments to the Company or to provide any reports to the Company with respect to the Processed Payments.

Ms. Jill Miller, Esq.
April 14, 2021
Page 2 of 2

Accordingly, and pursuant to Section 6.1 of the Agreement, this letter constitutes written notice that the Company is hereby terminating the Agreement immediately if Smart Merchant fails to cure the Section 3.2 Breaches by May 14, 2021, in each case for the months of July 2020, August 2020, September 2020, October 2020, November 2020, December 2020, January 2021, February 2021, and March 2021.

The above speaks only to the matters described above.  My client expressly reserves all rights and defenses.  Please confirm receipt of this letter via reply email – as you know, my email address is mas@kirkpatricksabarsky.com.

Sincerely,

Martin A. Sabarsky, Esq.
Partner

Cc:  Mr. Sam Sippl (via email to s.sippl@servicepower.com)
      Mr. Marc Casarino, Esq. (via email to casarinom@whiteandwilliams.com)

EFiled:  May 17 2021 05:27PM EDT
Transaction ID 66608188
Case No. N21C-05-144 DCS

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| SERVICEPOWER, INC., | |
| Plaintiff, | C.A. No. |
| v. | |
| SMART MERCHANT, LLC, | |
| Defendant. | |

## SUMMONS

**TO PLAINTIFF'S COUNSEL:**

**YOU ARE COMMANDED:**

To summon the above named Defendants so that, within twenty (20) days after service hereof upon Defendant's agents, exclusive of the day of service, Defendant shall serve upon Plaintiff's attorneys, Marc S. Casarino, Esquire, Counsel for Plaintiff, at White and Williams LLP, 600 N. King Street, Ste. 800, Wilmington, Delaware 19801, an Answer to the Complaint.

To serve upon Defendant's agents a copy hereof and of the Complaint (and of the affidavit of demand if any has been filed by Plaintiffs) pursuant to 10 Del. C. § 3104.

Dated:                                    Prothonotary

                                         **Lisa G. Fontello**


                                         _____

                                         Per Deputy

27135575v.1

**TO THE ABOVE NAMED DEFENDANTS:**

In case of your failure, within twenty (20) days after service hereof, exclusive of the day of service, to serve upon Plaintiff's attorney named above an Answer to the Complaint (and, if an affidavit of demand has been filed, an affidavit of defense), judgment by default will be rendered against you for the relief demanded in the Complaint (or in the affidavit of demand, if any).

Dated:                                                  Prothonotary
                                                        **Lisa G. Fontello**

                                                        _____
                                                        Per Deputy

27135575v.1

EFiled: May 17 2021 05:27PM EDT
Transaction ID 66608188
Case No. N21C-05-144 DCS

# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| SERVICEPOWER, INC., | |
|                 Plaintiff, | C.A. No. |
|    v. | |
| SMART MERCHANT, LLC, | |
|                 Defendant. | |

## 10 DEL. C. § 3104 PRAECIPE

TO:   Clerk, Superior Court
       New Castle County Courthouse
       500 North King Street, Suite 500
       Wilmington, DE 19801

**PLEASE ISSUE SUMMONS** and a copy of the Complaint to the Plaintiff's

counsel of record, commanding Plaintiff's counsel to summon and direct the below

named Defendant to answer the Complaint by serving the Defendant with the

Summons and a copy of the Complaint at the Defendant's address in accordance

with 10 Del. C. § 3104:

> Defendant Smart Merchant, LLC, is a foreign business entity doing
>
> business in the State of Delaware and is subject to service of process
>
> pursuant to 10 Del. C. § 3104.  Defendant Smart Merchant, LLC's
>
> address for receipt of process is c/o Kevin Deegan, 6700 Alexander
>
> Bell Dr., Suite 200, Columbia, MD 21406.

27135739v.1

Dated: May 17, 2021                    **WHITE AND WILLIAMS LLP**

By:_____

MARC S. CASARINO (DE #3613)
KELLY ROWE (DE #6199)
600 N. King Street, Suite 800
Wilmington, DE 19801
Ph: (302) 467-4532
Email:  casarinom@whiteandwilliams.com
*Attorneys for Plaintiff,*
*SERVICEPOWER, INC.*

EFiled:  May 17 2021 05:27PM EDT
Transaction ID 66608188
Case No. N21C-05-144 DCS

**SUPERIOR COURT**
**CIVIL CASE INFORMATION STATEMENT (CIS)**

COUNTY: __**N**__ K ___ S ___ | CIVIL ACTION NUMBER: _____

Caption:

SERVICEPOWER, INC.,

                Plaintiff,

    v.

SMART MERCHANT, LLC,

                Defendant.

Civil Case Code:  __CDBT_____

Civil Case Type:  __Breach of Contract_____
                  (SEE REVERSE SIDE FOR CODE AND TYPE)

Name and Status of Party filing document:
Servicepower, Inc., Plaintiff

Document Type: (E.G.; COMPLAINT; ANSWER WITH COUNTERCLAIM)
Complaint

JURY DEMAND:   YES ____   NO ___ x ___

ATTORNEY NAME(S):

MARC S. CASARINO
ATTORNEY ID: 3613
KELLY ROWE
ATTORNEY ID: 6199

FIRM NAME:

WHITE AND WILLIAMS LLP

ADDRESS:

COURTHOUSE SQUARE
600 N. KING STREET, SUITE 800
WILMINGTON, DE  19801

TELEPHONE NUMBER:
302-467-4520

FAX NUMBER:
302-467-4550

E-MAIL ADDRESS:
CASARINOM@WHITEANDWILLIAMS.COM
ROWEK@WHITEANDWILLIAMS.COM

IDENTIFY ANY RELATED CASES NOW PENDING IN THE SUPERIOR COURT BY CAPTION AND CIVIL ACTION NUMBER INCLUDING JUDGE'S INITIALS:

EXPLAIN THE RELATIONSHIP(S):

OTHER UNUSUAL ISSUES THAT AFFECT CASE MANAGEMENT:

(IF ADDITIONAL SPACE IS NEEDED, PLEASE  ATTACH PAGE)

**THE PROTHONOTARY WILL NOT PROCESS THE COMPLAINT, ANSWER, OR FIRST RESPONSIVE PLEADING IN THIS MATTER FOR SERVICE UNTIL THE CASE  INFORMATION STATEMENT (CIS) IS FILED.  THE FAILURE TO FILE THE CIS AND HAVE THE PLEADING PROCESSED FOR SERVICE MAY RESULT IN THE DISMISSAL OF THE COMPLAINT OR MAY RESULT IN THE ANSWER OR FIRST RESPONSIVE PLEADING BEING STRICKEN.**

27134375v.1
27134375v.1

**EFiled: May 21 2021 09:28AM EDT**
**Transaction ID 66620800**
**Case No. N21C-05-144 DCS**
Case No. N21C-05-144 DCS

$5792$

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

SERVICEPOWER, INC.,

           Plaintiff,       |  C.A. No.

        v.

SMART MERCHANT, LLC,

           Defendant.

## 10 DEL. C. § 3104 PRAECIPE

TO:   Clerk, Superior Court
       New Castle County Courthouse
       500 North King Street, Suite 500
       Wilmington, DE 19801

     **PLEASE ISSUE SUMMONS** and a copy of the Complaint to the Plaintiff's

counsel of record, commanding Plaintiff's counsel to summon and direct the below

named Defendant to answer the Complaint by serving the Defendant with the

Summons and a copy of the Complaint at the Defendant's address in accordance

with 10 Del. C. § 3104:

          Defendant Smart Merchant, LLC, is a foreign business entity doing

          business in the State of Delaware and is subject to service of process

          pursuant to 10 Del. C. § 3104.  Defendant Smart Merchant, LLC's

          address for receipt of process is c/o Kevin Deegan, 6700 Alexander

          Bell Dr., Suite 200, Columbia, MD 21406.

(1) writ issued
for 3104

27135739v.1

Dated: May 17, 2021                    **WHITE AND WILLIAMS LLP**

By: _Marc S. Casarino_

MARC S. CASARINO (DE #3613)
KELLY ROWE (DE #6199)
600 N. King Street, Suite 800
Wilmington, DE 19801
Ph: (302) 467-4532
Email: casarinom@whiteandwilliams.com
*Attorneys for Plaintiff,*
*SERVICEPOWER, INC.*